# Third District Court of Appeal

## State of Florida

Opinion filed March 31, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D25-2274
Lower Tribunal No. 25-6958-CA-01
_____

**Palm Beach General Surgery, LLC, etc.,**
Petitioner,

vs.

**Rebecca Grazioli,**
Respondent.

A Writ of Certiorari to the Circuit Court for Miami-Dade County, Ariana Fajardo Orshan, Judge.

La Cava Jacobson & Goodis, P.A., and Jason M. Azzarone, Marci L. Strauss, Louis J. LaCava and Ian P. Singer (Tampa), for petitioner.

Lisa S. Levine, P.A., and Lisa S. Levine and Sydney A. Levine (Weston); Burlington & Rockenbach, P.A., and Nichole J. Segal (West Palm Beach), for respondent.

Before EMAS, GORDO and BOKOR, JJ.

PER CURIAM.

**INTRODUCTION**

Rebecca and James Grazioli (together, "Grazioli") filed a medical malpractice action against several defendants, including a negligent credentialing claim against Palm Beach General Surgery, LLC (PBGS/Petitioner). PBGS seeks certiorari review of the trial court's order denying its motion seeking a determination that Grazioli failed to comply with the presuit investigation requirements of Chapter 766, Florida Statutes.

For the reasons that follow, we grant the petition, issue the writ, and quash the relevant portion of the challenged order.

**FACTUAL AND PROCEDURAL HISTORY**

In December 2022, Rebecca Grazioli received care and treatment from Neel Patel, MD, an oral and maxillofacial surgeon employed by Palm Beach General Surgery, LLC (PBGS). She alleges the surgery resulted in significant and permanent injury to her.

On November 14, 2024, Grazioli sent Dr. Patel a notice of intent to initiate litigation for medical malpractice. The notice included an affidavit from plaintiff's expert, Glen Maron, in which he listed five ways Dr. Patel and PBGS's care of Grazioli deviated from the standard of care leading to her significant and permanent injury. No allegations related to negligent credentialing by PBGS were included in the affidavit.

2

In April 2025, Grazioli sued Dr. Patel and PBGS, alleging her injuries were caused by the defendants' medical malpractice during surgery. Count I alleged medical negligence solely against the treating physician, Dr. Patel. Count II alleged a direct count of negligent credentialing against PBGS, and it is this claim for negligent credentialing, and the underlying allegations, that are material to the issue presented.[1]

Count II alleged in relevant part that PBGS "had a duty to select and appoint its employee . . . Neel Patel, MD, in its care and treatment of . . . Rebecca Grazioli, who was qualified to render oral and maxillofacial surgical care in accordance with the prevailing professional dental standards." PBGS "breached said duty," Count II continued, "by negligently and carelessly caring for and treating. . . Rebecca Grazioli, in that it was negligent in the selection and appointment of its employee . . . Neel Patel, MD, so as to allow an employee to practice under its employ that was not qualified to render oral and maxillofacial surgical care in accordance with the prevailing professional dental standards."

---

[1] The remaining counts of the complaint (alleging PBGS is vicariously liable for Dr. Patel's negligence, as well as claims that PBGS was negligent in regulating and supervising Dr. Patel) are not challenged in the petition filed by PBGS.

As for the presuit requirements in Chapter 766, the complaint alleged Grazioli complied with all "conditions precedent and presuit provisions," and that counsel "made a reasonable investigation of the circumstances giving rise to this lawsuit and such investigation gave rise to a good faith belief that grounds exist for an action against the named Defendants." The pertinent provisions of Chapter 766 include section 766.104(1) which requires the plaintiff to conduct a "reasonable investigation" establishing a "good faith belief" the defendant was negligent in his "care or treatment" of the plaintiff, and to attach to the complaint a certificate of counsel to that effect:

> No action shall be filed for personal injury or wrongful death arising out of medical negligence, whether in tort or in contract, unless the attorney filing the action has made *a reasonable investigation* as permitted by the circumstances to determine that there are grounds for *a good faith belief that there has been negligence* in the care or treatment of the claimant. The complaint or initial pleading shall contain *a certificate of counsel* that such reasonable investigation gave rise to a good faith belief that grounds exist for an action against each named defendant.

§ 766.104(1), Fla. Stat. (Emphasis added).

And sections 766.203(2) and 766.106(2) which (together) require the plaintiff, upon completion of the presuit investigation, to send a notice of intent to initiate a medical malpractice action against "each prospective defendant" with a verified opinion from a medical expert corroborating a "reasonable grounds to initiate" the medical malpractice lawsuit:

(2) **Presuit investigation by claimant.** Prior to issuing notification of intent to initiate medical negligence litigation pursuant to s. 766.106, the claimant shall conduct an investigation to ascertain that there are reasonable grounds to believe that:

(a) Any named defendant in the litigation was negligent in the care or treatment of the claimant; and

(b) Such negligence resulted in injury to the claimant.

Corroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant's *submission of a verified written medical expert opinion from a medical expert* as defined in s. 766.202(6), at the time the notice of intent to initiate litigation is mailed, which statement shall corroborate reasonable grounds to support the claim of medical negligence.

§ 766.203(2), Fla. Stat. (Emphasis added).

After completion of presuit investigation pursuant to s. 766.203(2) and before filing a complaint for medical negligence, a claimant *shall notify each prospective defendant of intent to initiate litigation for medical negligence*. . . .

§ 766.106(2), Fla. Stat. (Emphasis added).

PBGS (and Dr. Patel) filed the underlying motion to determine Grazioli's compliance with reasonable presuit investigation pursuant to Chapter 766, and to dismiss Count II on that basis. PBGS contended that Grazioli failed to comply with the statutory presuit requirements for medical negligence actions prescribed by Chapter 766, in that, for example, she "failed to provide any expert corroboration in support of her credentialling

5

claim" and made "no mention" of her negligent credentialling claim in the notice of intent to initiate the underlying litigation. Grazioli filed a response to the underlying motion, but did not address PBGS's argument pertaining to the negligent credentialing claim.

At the conclusion of the hearing on the motion, the trial court rejected PBGS's arguments pertaining to presuit notice of the negligent credentialing claim, but dismissed the complaint without prejudice for Grazioli to more clearly plead the causes of action related to negligent retention and supervision: "I'm not dismissing it based on a pre-suit letter, but you need to figure out on a motion to dismiss those causes of actions can't [be] lumped in."

The trial court later entered an order consistent with its oral ruling, denying the motion as it pertained to the negligent credentialing claim and Grazioli's alleged failure to comply with reasonable presuit investigation pursuant to Chapter 766. This petition for certiorari followed.

**ANALYSIS AND DISCUSSION**

Generally, Florida appellate courts have certiorari jurisdiction to review whether a plaintiff has complied with the presuit notification requirements of the Medical Malpractice Act, Chapter 766, Florida Statutes (2025). As our sister court recently observed:

6

Because nonfinal orders subject to interlocutory review are limited to those set forth in Rule 9.130 of the Florida Rules of Appellate Procedure, certiorari generally is unavailable to review a trial court's denial of a motion to dismiss.

However, "Florida courts have created an 'exception . . . when the presuit requirements of a medical malpractice statute are at issue' since the 'purpose' of the Medical Malpractice Act is 'to avoid meritless claims and to encourage settlement for meritorious claims.' "

. . .

[C]ertiorari lies "to ensure that the procedural aspects of the presuit requirements are met." For example, certiorari review is permitted to resolve "whether a plaintiff—before the filing of the medical malpractice lawsuit—gave the defendant 'advance notice' and provided an 'opportunity [for the defendant] to examine [the] claim.' Thus, a district court can grant certiorari review **to verify that the plaintiff submitted the corroborating affidavit** of an expert witness." And if an appropriate corroborating affidavit has not been provided, "[c]ertiorari may be an appropriate remedy if the error is one that resulted in the **deprivation of the right to the process itself**."

Wells v. Quintero, 51 Fla. L. Weekly D162 at *3 (Fla. 5th DCA Jan. 23, 2026) (internal citations and quotations omitted) (emphasis in original).

To be entitled to certiorari relief, a petitioner must establish that the challenged order "(1) constitutes a departure from the essential requirements of the law; (2) causes material injury throughout the remainder of the proceedings below; and (3) causes injury that is irreparable, as it effectively leaves no adequate remedy at law." Prichard v. Galicia, 407 So. 3d 537, 539 n.2 (Fla. 3d DCA 2025) (quotation omitted).

7

PBGS contends the trial court's order denying its motion departed from the essential requirements of the law because "there was absolutely no mention of [] [Grazioli's] intention to bring a claim for negligent credentialing during pre-suit." Grazioli responds that the statute does not require a plaintiff to "corroborate all discrete claims against a prospective defendant." Instead, she asserts, she could meet those requirements by having "presuited at least one theory of liability against" the defendants.  We disagree.

Before filing a medical malpractice lawsuit, a plaintiff must comply with certain statutory presuit requirements under Chapter 766. The purpose of these presuit requirements is to "promote the settlement of meritorious claims at an early stage without the necessity of a full adversarial proceeding." Hermoso v. New Life Plastic Surgery Corp., 415 So. 3d 835, 839 (Fla. 3d DCA 2025) (quotation omitted). To this end, a plaintiff must conduct "a reasonable investigation as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant." § 766.104(1), Fla. Stat. (2025).  Such investigation consists of: "(1) review of the case against *each* potential defendant; (2) consultation with a medical expert; and (3) written corroboration of negligence by a medical expert[.]" Hermoso, 415 So. 3d at 839 (quoting Largie v. Gregorian, 913 So. 2d 635, 638 (Fla. 3d DCA 2005))

8

(emphasis in original); see also Bonati v. Allen, 911 So. 2d 285, 287-88 (Fla. 5th DCA 2005) ("The chapter defines 'investigation' to mean 'that an attorney has reviewed the case against **each and every potential defendant** and has consulted with a medical expert and has obtained a written opinion from said expert.'" (quoting § 766.202(4), Fla. Stat. (2005)) (emphasis added)). Upon completion of the presuit investigation, the plaintiff must file a presuit notice before filing her medical malpractice lawsuit. § 766.106(2), Fla. Stat.

In short, the notice of intent to initiate litigation, together with the corroborating affidavit, "must sufficiently indicate the manner in which the defendant . . . allegedly deviated from the standard of care, and must provide adequate information for the defendants to evaluate the merits of the claim." Tomas v. Sandler, 406 So. 3d 1089, 1093-94 (Fla. 3d DCA 2025) (internal quotation marks and citation omitted).

The dispute presented in this petition does not relate to the sufficiency of the corroborating affidavit regarding Grazioli's claims of medical negligence, but is limited to the negligent credentialing claim and the sufficiency of the underlying corroborating affidavit related to that claim.

Grazioli alleges in her complaint that PBGS "was negligent in the selection and appointments of its employee, [Dr. Patel], so as to allow an employee to practice under its employ that was not qualified to render oral

9

and maxillofacial surgical care in accordance with the prevailing professional dental standards."  As this court has previously acknowledged, negligent credentialing is a distinct tort that falls within the scope of claims subject to the Medical Malpractice Act:

> Negligent credentialing, otherwise known as negligent privileging, is a distinct tort that "involve[s] wrongful conduct both by the person who is derivatively liable and the actor whose wrongful conduct was the direct cause of injury to another." Grobman v. Posey, 863 So. 2d 1230, 1235–36 (Fla. 4th DCA 2003) (quoting William D. Underwood & Michael D. Morrison, Apportioning Resp. in Cases Involving Claims of Vicarious, Derivative, or Statutory Liab. for Harm Directly Caused by the Conduct of Another, 55 Baylor L. Rev. 617, 619 (2003)). *It is administrative, rather than medical, in nature.* The plaintiff bears the burden of proving that the hospital negligently granted privileges to a physician it knew or should have known was incompetent or unqualified. See Peter Schmit., Causes of Action for Negligent Credentialing, 18 COA 2d 329, § 6 (2025).

Tomas, 406 So. 3d at 1094 (emphasis added). Accordingly, the question here is whether the corroborating affidavit's allegations of medical negligence alone were sufficient to meet presuit requirements.  We hold that they were not, and grant the petition.

The notice of intent, sent by certified mail, was addressed only to Dr. Patel, and concludes, without elaboration: "You are hereby notified that we have, on this date, directed a Notice of Intent to Initiate Litigation for Medical Malpractice to PALM BEACH GENERAL SURGERY, LLC d/b/a HCA

FLORIDA HEAD & NECK ONCOLOGY AND RECONSTRUCTIVE SURGERY." And the corroborating presuit affidavit merely mentioned PBGS in the context of Grazioli's claim against Dr. Patel:

> Based on my review of the aforementioned records, my examination and my background, training and experience, it is my professional opinion based on a reasonable degree of dental probability that **the care provided to REBECCA GRAZIOLI by** NEEL PATEL, MD and **PALM BEACH GENERAL SURGERY**, LLC d/b/a HCA FLORIDA HEAD & NECK ONCOLOGY AND RECONSTRUCTION SURGERY, and any unknown potential defendants, **deviated from the standard of care in the following manner:**
>
> A. By utilizing inadequate fixation with only three (3) screws in the native mandible during the surgery of December 29, 2022.
>
> B. By failing to recognize the significance of the previously placed plate.
>
> C. By failing to utilize a custom plate which would have had more screws on the distal side.
>
> D. By leaving Rebecca Grazioli with malocclusion during the surgery of December 29, 2022 i.e. an open bite on the right side.
>
> E. By failing to appropriately manage the complication of MRSA postoperatively.

(Emphasis added).

These five actions are the entire sum and substance of the conduct relied upon in the corroborating affidavit to satisfy presuit notice requirements, and these same five actions form the gravamen of the

11

Grazioli's complaint of medical negligence. Yetnone relate to negligent credentialing, nor do they allege any specific act (or failure to act) by PBGS.

Simply stated, the notice of intent and the corroborating affidavit failed to "sufficiently indicate the manner in which the defendant . . . allegedly deviated from the standard of care," so as to "provide adequate information for the defendants to evaluate the merits of the claim." Tomas, 406 So. 3d at 1093-94 (quotation omitted).

This court's decision in Tomas is instructive. In Tomas, the plaintiff submitted a presuit affidavit pertinent to its medical negligence claims against the treating doctor and a negligent credentialing claim against the hospital. As to the negligent credentialing claim against the hospital, the affidavit merely stated:

> Mariners Hospital, Inc. fell below applicable standards of care for credentialing surgeons in credentialing and authorizing Dr. Sandler to perform a total ankle replacement procedure. It is therefore my opinion within reasonable medical probability that Mariners Hospital, Inc. fell below applicable standards of care in their supervision and credentialing of Dr. Sandler and was therefore negligent, and that this negligence resulted in injury to Mr. Tomas as summarized above.

Tomas, 406 So. 3d at 1092.

On appeal, this court addressed only the sufficiency of the affidavit as it related to the negligent credentialing claim against the hospital. It found the presuit affidavit insufficient as it was "devoid of detail as to the administrative

12

standard of care relating to credentialing or any supporting facts." Id. at 1094. We concluded that, because the affidavit lacked information on the standard of care, the defendant hospital "was left with no information to evaluate the merits of the negligent credentialing claim." Id. Here, Grazioli's notice and corroborating affidavit similarly made no mention of any of its claims against PBGS, and wholly failed to mention negligent credentialing (or any action or inaction relating to a claim of negligent credentialing).

Grazioli contends Tomas is inapplicable, arguing, for example, that it conflicts with an earlier decision from this court—Michael v. Med. Staffing Network, Inc., 947 So. 2d 614 (Fla. 3d DCA 2007). Michael, however, is inapt.

In Michael, we held that a corroborating affidavit that did not list a defendant nurse—but referred to the defendant hospital's employees and requested information regarding any other prospective defendants—did not violate statutory presuit requirements: "Nowhere does the statute indicate that an affidavit must be defendant-specific. As the Fourth District has explained, 'nothing in the statute requires that the corroborating expert opinion identify every possible instance of medical negligence.'" Id. at 619 (quoting Columbia/JFK Med. Ctr. Ltd. P'ship v. Brown, 805 So. 2d 28, 29 (Fla. 4th DCA 2001)). However, Michael is distinguishable, both legally and

13

factually, from the instant case. First, <u>Michael</u> addressed a different legal issue—the "level of specificity [required] in naming prospective defendants in corroborating medical expert affidavits served in medical malpractice actions, pursuant to chapter 766, Florida Statutes (2004)." <u>Id.</u> at 615. Here, it is undisputed that PBGS was named in the affidavit.

Second, the negligence alleged in Michael concerned a single episode of medical treatment from various medical professionals, including the nurse. <u>Id.</u> at 616-17. In contrast, here, Grazioli alleges distinct types of negligence against Dr. Patel and PBGS—medical negligence and administrative negligence, respectively—yet the affidavit speaks only to medical negligence and offers no action or inaction of PBGS related to a claim of negligent credentialing. The enumeration of alleged acts by Dr. Patel related to medical negligence cannot corroborate Grazioli's administrative negligence claim against PBGS. To this point, the <u>Michael</u> court distinguished between requiring a notice to corroborate the <u>defendants</u> as opposed to the <u>claims</u>: "[T]he language of the statute focuses on corroboration of the claims, not corroboration of each defendant's involvement." <u>Id.</u> at 620. In other words, the corroborating affidavit's enumeration of the five alleged acts of Dr. Patel might meet the presuit requirements for a vicarious liability claim against

14

PBGS, but not for a direct claim of administrative negligence against PBGS for negligent credentialing.

The corroborating affidavit in the instant case, while listing specific actions by Dr. Patel in treating Grazioli, contains no allegations regarding actions or conduct by PBGS and failed to place PBGS on notice (for express statutory purposes of investigating claims and pursuing settlement) of an administrative negligence claim. See Univ. of Miami v. Wilson, 948 So. 2d 774, 778–79 (Fla. 3d DCA 2006) ("The purpose of the presuit requirement is to allow a potential defendant to investigate a claim and to encourage settlement prior to costly and time-consuming litigation.").

## CONCLUSION

We therefore grant the petition, issue the writ, and quash that portion of the order denying PBGS's "Motion to Determine [Grazioli's] Compliance with Reasonable Presuit Investigation" as it relates to negligent credentialing claim alleged against PBGS in Count II.