PER CURIAM.
Katherine D. Wolford and her husband, Barry Wolford [“the Wolfords”], plaintiffs below, seek certiorari review of the circuit court order denying their motion to strike the responsive pleadings of the defendants below, Scott A. Boone, M.D., and Adventist Health System/Sunbelt, Inc., doing business as Florida Hospital [“Respondent”]. For the reasons that follow, we grant the writ, in part.
On May 26, 1999, Dr. Boone performed a laproscopically assisted vaginal hysterectomy and vaginal cuff suspension on Katherine Wolford while she was a patient at Loch Haven OB/GYN Group, which is owned and operated by Florida Hospital. When she continued to experience pain, numbness and sexual dysfunction, Dr. Boone performed an exploratory laparoto-my and surgical repair with removal of Katherine’s ovaries. However, Katherine continued to suffer pain and injuries and retained counsel to file a medical malpractice action.
On January 6, 2000, Katherine’s counsel requested her medical records in a letter addressed to Loch Haven OB/GYN, to the attention of Dr. Boone and Dr. Frederick Hoover. When there was no response, a second letter was sent on February 24, 2000, noting that the requested documents had not been received. Again, no response was received.
On March 7, 2000, the Wolfords’ counsel sent notices of intent to initiate litigation by certified mail, return receipt requested, to Dr. Boone and to Loch Haven.[1] A third request for Katherine’s medical records was included. Also included were other requests for presuit discovery, including a request to take the unsworn statement of Dr. Boone at 10:00 a.m. on March 29. The notice requested an alternative date or time if the one chosen were inconvenient. The return receipts were signed for on March 9, 2000, by a Florida Hospital employee assigned to Loch Haven. Dr. Boone acknowledged receiving the notice of intent package, and he testified that he forwarded it to risk management. He was not thereafter contacted by risk management, and he did not contact risk management to follow up.
On March 10, 2000, Katherine’s medical records were finally forwarded to her attorney. However, no other response to the notice of intent was received, so the Wolfords’ attorney faxed another letter to Dr. Boone on March 27, 2000, to remind him of the scheduled unsworn statement. Receipt was confirmed by facsimile printout. The same letter was also sent Federal Express Overnight to Dr. Boone and was signed for by the same employee on March 28, 2000. Nonetheless, Dr. Boone failed to respond to the letter, and he failed to appear for his unsworn statement. Although he admitted receiving the March 7, 2000, notice of intent package, he claimed not to know his statement was noticed for March 29 until he received the March 27 letter.
Two hours after the scheduled statement was to take place, Dr. Boone contacted the Wolfords’ attorney. He said he had “just read” the March 27 letter from the Wolfords’ attorney and that obviously he would not be able to appear as indicated because the hour had passed. Dr. Boone claimed he offered to reschedule his statement, but Katherine’s counsel denied this. Dr. Boone was advised by Katherine’s counsel to contact his insurance company *1209 regarding the notice of claim and notice of intent, and a follow-up letter was mailed to him confirming this advice. Again, the receipt for the letter was signed by the same employee. No further communication was received from Dr. Boone or anyone representing him.
In June 2000, suit was filed by the Wol-fords against Dr. Boone and Loch Haven OB/GYN Group. A second amended complaint was later filed against Adventist Health System/Sunbelt, Inc., doing business as Florida Hospital.
Answers and affirmative defenses were filed on behalf of respondents, denying liability. Dr. Boone also alleged as an affirmative defense that his failure to respond to presuit notices was the result of mistake, inadvertence and/or excusable neglect. Adventist alleged as an affirmative defense that it was never directly placed on notice of intent to initiate litigation and therefore could not be sanctioned as a result of any failure to participate in pre-suit discovery on the part of Dr. Boone.
At his deposition, Dr. Boone stated that he recalled seeing the January 6, 2000, letter and had instructed some employee to provide the requested medical records. When he received the second letter, he says he alerted someone that the records had not been sent. He also acknowledged seeing the notice of intent and said that he forwarded the notice by interoffice mail to the risk management office and then waited for instructions from them. Dr. Boone made a similar allegation in his response to the request for admissions, stating that his conduct was based on mistake, inadvertence and excusable neglect. Florida Hospital admitted in its response to the request for admissions that correspondence and a notice of intent had been sent to Loch Haven, but claimed that it had never received any records request addressed to it. However, Florida Hospital did admit that Dr. Boone was its employee.
The Wolfords filed a motion to strike respondents’ pleadings. The Wolfords argued that respondents had failed to timely provide medical records, that Dr. Boone had failed to attend the scheduled unsworn statement, and that respondents had failed to conduct a presuit investigation, as required by law. Accordingly, the Wolfords argued that section 766.206(8), Florida Statutes (1999), required the court to strike respondents’ answer, and section 766.106(3)(a), Florida Statutes (1999), justified dismissal of the claims and defenses.
In reply, Dr. Boone’s attorney filed his own affidavit, stating that shortly after he was retained in June 2000, he had Katherine’s medical records reviewed by board certified obstetrician and gynecologist, Dr. Andrea Rapkin, who advised that Dr. Boone’s care met the relevant standard of care and that he was not negligent. Dr. Boone’s attorney also alleged in his affidavit that in preparation for the motion to strike, he had the records reviewed by a second specialist, Dr. Cordell Mitchell, who agreed with Dr. Rapkin. In short, because he had a colorable defense, his failures to comply with the presuit procedures of the medical malpractice statute should not deprive him of the right to defend himself. A hearing was held on the motion to strike, and the trial court subsequently entered an order denying the motion to strike without explanation.
The Wolfords argue with considerable justification and force that this court is bound by the approach taken in Torrey v. Leesburg Regional Medical Center, 796 So.2d 644 (Fla. 5th DCA), review denied, 797 So.2d 590 (Fla.2001). In Torrey, this court held that the trial court had abused its discretion in failing to dismiss a malpractice complaint where the plaintiff had failed to attach a medical expert’s opinion *1210 to the notice of intent, the opinion belatedly served was defective, and the plaintiff failed to make discoverable information available after a second request. This court said that the presuit procedures are mandatory and, because Torrey did not comply, her complaint must be dismissed. Id. at 546. The Wolfords rightfully argue that the failure to apply the statute as interpreted in Torrey even-handedly to both physicians and malpractice claimants would be unjust.
The trial court in Torrey had expressly decided that plaintiffs actions did not rise to the level of willful non-compliance requiring dismissal, but this court held that sustaining that finding would require ignoring the purpose of the statute. Id. The Torrey panel decided that the trial court’s finding of lack of willfulness could not be supported by the record, because although a first failure to provide requested information could be construed as non-willful, a second failure could not be. Id. The court concluded, therefore, that plaintiffs willful failure to provide discoverable information after a second request required dismissal. Id. The facts of this ease appear to be more egregious, yet the physician and hospital were not sanctioned.
In general, the law should favor a decision on the merits of these claims, and an appellate court should uphold such a decision by the trial court whenever possible. Although claimants and physicians should be sanctioned for their failure to follow the rules to an equivalent degree, the striking of pleadings or dismissal of a case should be reserved for the most contumacious behavior. In saying that failing twice to respond to presuit discovery requests must be deemed willful and must result in dismissal because the legislature wants the adjudication of medical malpractice cases to be fast and cheap, Torrey at 546, the Torrey panel may have said too little- about the legislature’s other goals— to determine which claims do have merit and to preserve the right of trial by jury. See § 766.201(l)(b), Fla. Stat. (2003). We do not read Torrey as establishing a bright line “two strikes and you’re out” policy, but we do believe it places a burden on the defaulting party to demonstrate how its failure to comply with the statute’s pre-suit requirements did not frustrate the statute’s goals or prejudice the opposing party.
Because our role is to review orders imposing or declining to impose a sanction for abuse of discretion, it is impossible for this court to carry out any meaningful review without findings by the trial court. In Torrey, the trial court had sufficiently explained the basis for his ruling. In this case, there is no explanation of the trial court’s analysis of the relevant facts or any explanation why the analysis in Torrey is not applicable. We simply cannot tell whether the trial court abused its discretion in apparently concluding that respondents’ conduct was not wilful or that Torrey did not apply. Accordingly, we grant the petition to the extent that the order at issue lacks findings. And, in future, we will require the trial court to explain the legal or factual basis for its ruling on sanctions in medical malpractice cases, at least where, as here, the basis for the decision is not apparent.
PETITION GRANTED in part; DENIED in part.
SAWAYA, C.J., PETERSON and GRIFFIN, JJ., concur.

. No separate notice was sent to Florida Hospital.