DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BRITTANY CORDERO,** et al.,
Appellants,

v.

**MARTIN MEMORIAL MEDICAL CENTER, INC.,** a/k/a **CLEVELAND CLINIC MARTIN HEALTH,** et al.,
Appellees.

No. 4D2024-2444

[February 25, 2026]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Brett Michael Waronicki, Judge; L.T. Case No. 562021CA000263.

Christy M. Penton of Penton Law Center, Pensacola, for appellants.

Marc J. Schleier and James D. DeChurch of Fowler White Burnett, P.A., Miami, for appellees.

LOTT, J.

Appellants, Plaintiffs below, appeal the circuit court's dismissal of their medical malpractice claim for failure to comply with the presuit investigation requirements of section 766.203(2), Florida Statutes (2021).

Section 766.203(2) requires:

> Presuit investigation by claimant.--Prior to issuing notification of intent to initiate medical negligence litigation pursuant to s. 766.106, the claimant shall conduct an investigation to ascertain that there are reasonable grounds to believe that:
>
> (a) Any named defendant in the litigation was negligent in the care or treatment of the claimant; and
>
> (b) Such negligence resulted in injury to the claimant.

Corroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant's submission of a verified written medical expert opinion from a medical expert as defined in s. 766.202(6), at the time the notice of intent to initiate litigation is mailed, which statement shall corroborate reasonable grounds to support the claim of medical negligence.

Here, the issue was the "verified written medical expert opinion" contemplated by section 766.203(2). Plaintiffs' expert opinion, submitted by a medical doctor, read:

Based on my education, training and experience as an obstetrician and gynecologist, and based upon my careful review of the aforementioned materials, I am of the opinion that within reasonable medical probability, the care and treatment rendered by the nurses, including but not limited to Kimberly Mallon, RN working on behalf of Martin Health System breached the accepted standards of care and prevailing professional practice owed to Brittany Cordero and her unborn child M.P. by failing to appropriately assess, monitor, recognize, and respond to Brittany Cordero's condition on the morning of September 21, 2018 which resulted in the injuries sustained to [the minor child].[1]

We agree with the circuit judge that such vague, conclusory, and boilerplate language failed to comply with section 766.203(2)'s presuit investigation requirements.[2]

Plaintiffs primarily argue that the language "failing to appropriately assess, monitor, recognize, and respond to Brittany Cordero's condition,"

---

[1] A registered nurse also provided an expert affidavit with substantially identical language.

[2] "Generally, a dismissal of a medical malpractice action for failure to comply with the presuit requirements is reviewed for abuse of discretion. But the trial court's ruling that the appellants' corroborating affidavit failed to comply with the statutory requirements is reviewed de novo." *Tomas v. Sandler*, 406 So. 3d 1089, 1093 (Fla. 3d DCA 2025) (quoting *Oliveros v. Adventist Health Sys./Sunbelt, Inc.*, 45 So. 3d 873, 876 (Fla. 2d DCA 2010)).

put forth by an expert, is sufficient to meet the definition of the word "corroborate."[3]

There are two problems with this argument. First, these words do not meet the definition of "corroborate" in a vacuum. *See Duffy v. Brooker*, 614 So. 2d 539, 546 (Fla. 1st DCA 1993), *abrogated on other grounds as recognized in Archer v. Maddux*, 645 So. 2d 544, 547 (Fla. 1st DCA 1994) (adopting definition of "corroborate" that requires that the "statement contain additional or supplemental information which strengthens the conclusions offered by the medical expert," and finding a statement that "contained no additional facts or circumstances to confirm his 'conclusory allegations'" was deficient).

Second, even if the words met the definition of "corroborate," the argument ignores the rest of the words in section 766.203(2). "Corroborate" is a transitive verb. It must be read in conjunction with its object, "reasonable grounds for medical negligence." As we recently stated, "the notice of intent to initiate litigation and the corroborating medical expert opinion, taken together, must sufficiently indicate the manner in which the defendant doctor allegedly deviated from the standard of care, and must provide adequate information for the defendants to evaluate the merits of the claim." *Potparic v. Barnes*, 419 So. 3d 1100, 1103 (Fla. 4th DCA 2025) (citation and quotations omitted).

The report here is boilerplate and *ipse dixit*; it does not "corroborate" anything. After reading the report, we are left without any meaningful indication that a presuit investigation was actually conducted; we are left scratching our heads as to what "reasonable grounds for medical negligence" any presuit investigation unearthed. The plain language of the statute requires more than Plaintiffs provided.

We reached a similar result in *Rafferty v. Martin Memorial Medical Center, Inc.*, 335 So. 3d 144 (Fla. 4th DCA 2022). There, we affirmed dismissal against a hospital and its nursing staff where "nothing in the statements addressed any deficiencies in the care provided by the hospital and its nursing staff." *Id.*

---

[3] Plaintiffs also argue that reversal would serve section 766.203(2)'s purposes of the statute, citing much discussion of such purposes. But "statutory purpose, while undoubtedly relevant to legal interpretation, cannot trump the clear requirements of the applicable text." *Krol v. FCA US, LLC*, 310 So. 3d 1270, 1274 (Fla. 2021).

3

The Third District likewise recently reached a similar result in *Tomas v. Sandler*, 406 So. 3d 1089, 1094 (Fla. 3d DCA 2025). There, the plaintiffs sued a hospital alleging negligent credentialing of a physician. *Id.* at 1091. The court affirmed dismissal based on a deficient section 766.203(2) affidavit. *Id.* at 1093–94. The court found that the corroborating affidavit "devoid of detail as to the administrative standard of care relating to credentialing or any supporting facts," and thus the hospital "was left with no information to evaluate the merits of the negligent credentialing claim." *Id.* at 1094.

Other courts have reached the same conclusion when faced with similarly conclusory affidavits. *See also, e.g., Duffy,* 614 So. 2d at 545 (requiring more than "merely a reiteration of the statement to be corroborated" and rejecting as insufficient "conclusory allegations" that did not "sufficiently indicate the manner in which the [medical provider] allegedly deviated from the standard of care"); *Univ. of S. Fla. Bd. of Trs v. Mann,* 159 So. 3d 283, 284 (Fla. 2d DCA 2015) (finding "affidavit is plainly insufficient as a statement to corroborate reasonable grounds to support a claim of medical malpractice" where "nothing in the affidavit addresses any deficiencies in the care provided by the nursing staff or supervisors").

Courts have also found affidavits deficient where the affidavits fail to articulate any opinion or factual basis supporting negligence by the named defendant. *Wells v. Quintero,* 2026 WL 179234, at *4 (Fla. 5th DCA Jan. 23, 2026) ("The affidavit contains no opinion whatsoever as to any negligence by North Florida OBGYN or its medical support staff. As such, North Florida OBGYN as a named defendant received no advance notice of the impending litigation concerning its alleged negligence and was thereby deprived of the statutorily granted ability to investigate the claim(s) and resolve any meritorious claim without the need for adversarial litigation. As a result, dismissal of count III should have been granted."); *Rell v. McCulla,* 101 So. 3d 878, 881 (Fla. 2d DCA 2012) ("[T]he issue here is whether the McCullas' corroborating affidavit sufficiently indicated that the McCullas had a legitimate claim for medical malpractice."); *Largie v. Gregorian,* 913 So. 2d 635, 639 (Fla. 3d DCA 2005) (affidavit deficient where "it makes no reference to the standard of care applicable to a certified registered nurse practitioner or to any deviation from that standard of care; and, it does not suggest, much less corroborate, that any investigation took place with regard to Nurse Wang or that any reasonable grounds exist to support the Largies' claim against her . . . "); *cf. Michael v. Med. Staffing Network, Inc.,* 947 So. 2d 614, 620 (Fla. 3d DCA 2007) ("[A] medical expert affidavit must sufficiently demonstrate that a reasonable investigation into the claim was undertaken.").

Section 766.203(2), of course, does not require "strict specificity." *Michael,* 947 So. 2d at 620–21. As Plaintiffs point out, section 766.203(2) is not about providing notice to a defendant of the details of the claim. Rather, section 766.203(2) concerns the plaintiffs' obligation to investigate the merit of their claims before filing suit.[4] Section 766.203(2) requires, in connection with that investigation, an expert affidavit which "shall corroborate reasonable grounds to support the claim of medical negligence." § 766.203(2), Fla. Stat. (2023).

This statutory language does not permit "shoot first and ask questions later" litigation—file the claim, supported by the conclusory *ipse dixit* of an expert, and figure out later in the litigation what the purported negligence was.

On this point, our decision in *Potparic* is instructive. There, we affirmed dismissal where the "expert's affidavit did not tend to corroborate the negligence claim in [the plaintiff's] second amended complaint," because "[t]he only theory of negligence described in the expert's affidavit proved unfounded and was abandoned." 419 So. 3d at 1104. In other words, the expert's affidavit was insufficient even though he did sign a statement saying that he believed the plaintiff's claim for medical negligence had merit (which is what Plaintiffs here argue is all that is required). That expert said a certain theory had merit, but that theory in fact had no merit. The plaintiff, after realizing that theory had no merit, tried to pivot to a new theory. We held that the plaintiff could not assert a new theory because she never investigated the new theory which she was trying to plead.

Here, Plaintiffs' conclusory affidavit contains *no theory.* Allowing this to be sufficient would allow Plaintiffs to pivot to *any theory* which they wished later in the litigation, regardless of whether they had investigated such theory presuit. *Potparic* rightly held section 766.203(2) does not allow this.

---

[4] Plaintiffs cite *dicta* from *Stebilla v. Mussallem,* 595 So. 2d 136, 139 (Fla. 5th DCA 1992), which has been repeated by other Florida courts, in which the court quoted the appellant's brief in that case for the proposition that the report required by the statute "merely assures the Defendants, and the court, that a medical expert has determined that there is justification for the Plaintiffs' claim, i.e., that it is not a frivolous medical malpractice claim. The purpose of the medical expert opinion is to corroborate that the claim is legitimate, not to give notice of it."

We are not unsympathetic to our holding's consequences, which may effectively prevent Plaintiffs from further pursuing on the merits their claims for catastrophic medical negligence. But the legislature left us without discretion when the presuit investigation and affidavit requirements are not met. In such case, "the court shall dismiss the claim." § 766.206, Fla. Stat. (2021). The circuit court correctly did so here.

*Affirmed.*[5]

MAY and CONNER, JJ., concur.

---

[5] We summarily affirm on all other grounds raised by Plaintiffs.